IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICHARD SCARANTINO, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VERIFONE SYSTEMS, INC., ROBERT W. ALSPAUGH, KAREN AUSTIN, RONALD BLACK, PAUL GALANT, ALEX W. HART, ROBERT B. HENSKE, LARRY A. KLANE, JONATHAN I. SCHWARTZ, JANE J. THOMPSON, and ROWAN M. TROLLOPE,<br><br>Defendants. | Case No. _____<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief based upon, among other things, the investigation of counsel as to all other allegations herein, as follows:

**SUMMARY OF THE ACTION**

1. This action stems from a proposed transaction announced on April 9, 2018 (the "Proposed Transaction"), pursuant to which VeriFone Systems, Inc. ("VeriFone" or the "Company") will be acquired by affiliates of an investor group led by the private equity investment firm Francisco Partners.

2. On April 9, 2018, VeriFone's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Vertex Holdco LLC ("Parent") and Vertex Merger Sub LLC ("Merger Sub," and together with Merger Sub, "Vertex"). Pursuant to the terms of the Merger Agreement, if the

Proposed Transaction is approved by VeriFone's shareholders and completed, VeriFone shareholders will receive $23.04 in cash for each share of VeriFone common stock they own.

3.  On May 7, 2018, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.  The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.  This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.  Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES AND RELEVANT ENTITIES

8.  Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of VeriFone common stock.

9.  Defendant VeriFone is a Delaware corporation and maintains its principal

executive offices at 88 West Plumeria Drive, San Jose, California 95134. VeriFone's common stock is traded on the NYSE under the ticker symbol "PAY." VeriFone is a party to the Merger Agreement.

10. Defendant Robert W. Alspaugh ("Alspaugh") has served as a director of VeriFone since September 2008.

11. Defendant Karen Austin ("Austin") has served a director of VeriFone since June 2014.

12. Defendant Ronald Black ("Black") has served as a director of VeriFone since December 2017.

13. Defendant Paul Galant ("Galant") has served as a director and the Chief Executive Officer ("CEO") of VeriFone since October 2013.

14. Defendant Alex W. (Pete) Hart ("Hart") has served as a director of VeriFone since July 2006 and as Chairman of the Board since June 2014.

15. Defendant Robert B. Henske ("Henske") has served as a director of VeriFone since January 2005.

16. Defendant Larry A. Klane ("Klane") has served as a director of VeriFone since December 2017.

17. Defendant Jonathan I. Schwartz ("Schwartz") has served as a director of VeriFone since June 2014.

18. Defendant Jane J. Thompson ("Thompson") has served as a director of VeriFone since March 2014.

19. Defendant Rowan M. Trollope ("Trollope") has served as a director of VeriFone since May 2017.

20. The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

21. Non-party Francisco Partners is a global private equity firm.

22. Non-party Parent is a Delaware limited liability company and a party to the Merger Agreement.

23. Non-party Merger Sub is a Delaware limited liability company, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of VeriFone (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

25. This action is properly maintainable as a class action.

26. The Class is so numerous that joinder of all members is impracticable. As of April 4, 2018, there were approximately 110,711,498 shares of VeriFone common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

27. Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

28. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

29. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

30. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

31. VeriFone is a global leader in payments and commerce solutions at the point of sale. The Company connects payment devices to the cloud, merging the online and in-store shopping experience and creating the next generation of digital engagement between merchants and consumers. For over 35 years, VeriFone has designed, manufactured, marketed, and supplied a broad range of innovative payment solutions and complementary services. Its solutions enable merchants and the institutions that serve them to accept electronic forms of payment securely and ensure regulatory and industry standards compliance; enable value-added exchange between merchants and consumers; and enhance payment security. Key industries in which the Company operates include financial services, retail, petroleum, restaurant, hospitality, transportation, and healthcare. VeriFone sells into more than 150 countries worldwide, with a direct presence in approximately 40 countries.

32. VeriFone, Inc., the Company's principal operating subsidiary, was incorporated in 1981. Shortly afterward, the Company introduced the first check verification and credit

authorization device utilized by merchants in a commercial setting. In 1984, the Company introduced the first mass market electronic payment system intended to replace manual credit card authorization devices for small merchants. VeriFone, Inc. operated as a publicly-traded company from 1990 until it was acquired in 1997 by Hewlett-Packard ("HP"), which operated it as a division. In July 2001, HP sold VeriFone, Inc. to Gores Technology Group, LLC, a privately held acquisition and investment management firm. In July 2002, VeriFone, Inc. was recapitalized and VeriFone Systems, Inc. (formerly known as VeriFone Holdings, Inc.) was organized as a holding company for VeriFone, Inc. In connection with the recapitalization, certain investment funds affiliated with GTCR Golder Rauner, LLC, a private equity firm, became our majority stockholders. VeriFone completed its initial public offering on May 4, 2005. In June 2009, the GTCR-affiliated funds ceased to be beneficial owners of 5% or more of the Company's outstanding common stock.

33. On April 9, 2018, the Individual Defendants caused the Company to enter into the Merger Agreement with Vertex.

34. Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by VeriFone's shareholders, Merger Sub will be merged with and into the Company, with the Company continuing as the surviving corporation and a wholly owned subsidiary of Parent. If the Proposed Transaction is completed, VeriFone's shareholders will receive $23.04 in cash for each share of VeriFone common stock they own.

35. According to the press release announcing the Proposed Transaction:

Verifone Systems, Inc. (NYSE: PAY) ("Verifone" or the "Company"), a world leader in payment and commerce solutions, and Francisco Partners, a leading technology-focused private equity firm, today announced that they have entered into a definitive agreement under which an investor group led by Francisco Partners and including British Columbia Investment Management Corporation ("BCI") will acquire Verifone for $23.04 per share in cash, representing a total consideration of

6

approximately $3.4 billion, which includes Verifone's net debt.

Under the terms of the agreement, Verifone stockholders will receive $23.04 in cash for each share of Verifone common stock held, representing a premium of approximately 54% to the Company's closing share price of $15.00 on April 9, 2018. The Verifone Board of Directors has unanimously approved the definitive agreement and recommends that Verifone stockholders vote in favor of the transaction. Upon completion of the transaction, Verifone will become a privately held company. . . .

The transaction is not subject to a financing condition and is expected to close during the third calendar quarter of 2018, subject to customary closing conditions, including receipt of stockholder and regulatory approvals. The merger agreement includes a "go-shop" period, which permits Verifone's Board and advisors to actively initiate, solicit, encourage, and potentially enter into negotiations with parties that make alternative acquisition proposals through May 24, 2018. There can be no assurance that this process will result in a superior proposal, and Verifone does not intend to disclose developments with respect to the solicitation process unless and until the Board makes a determination requiring further disclosure.

36. Although defendants tout a 54% premium to the Company's closing share price of $15.00 on April 9, 2018, the Company's stock price closed as high as $21.31 on September 12, 2017 and $18.47 on March 9, 2018.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

37. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

38. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

39. The Proxy Statement omits material information regarding the Company's financial projections and the valuation analyses performed by the Company's financial advisor, Qatalyst Partners, LP ("Qatalyst").

40. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows

stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

41. All of the financial projections of the Company that were disclosed in the Proxy Statement are projections of non-GAAP (generally accepted accounting principles) financial measures. Defendants, however, failed to provide stockholders with the necessary line item projections for the metrics used to calculate the non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

42. To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, publicly traded companies must provide a reconciliation of the differences between the non-GAAP financial measures with the most comparable financial measures calculated and presented in accordance with GAAP. Indeed, defendants acknowledge in the Proxy Statement that: "These non-GAAP financial measures should not be viewed as a substitute for GAAP financial measures and may be different from non-GAAP financial measures used by other companies. Furthermore, there are limitations inherent in non-GAAP financial measures because they exclude items, including charges and credits, that are required to be included in a GAAP presentation." VeriFone, moreover, discloses its financial metrics in accordance with GAAP in its quarterly financial statements. As such, stockholders are entitled to the line item projections used to calculate the Company's non-GAAP projections or a reconciliation of the non-GAAP projections to the most comparable GAAP measures.

43. Additionally, in performing its Selected Companies Analysis and Selected

Transactions Analysis, Qatalyst relied on certain Wall Street analyst consensus estimates as of April 6, 2018 (the "Street Case projections"), but defendants failed to, but must, disclose those Street Case projections to stockholders.

44. With respect to Qatalyst's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) Qatalyst's basis for selecting a terminal exit Adjusted NOPAT multiple range of 12.0x to 16.0x; (ii) the specific inputs and assumptions underlying the discount rate range of 9.0x to 11.0x calculated by Qatalyst and applied to the Company's unlevered free cash flows and terminal values; and (iii) the perpetuity growth rates implied by Qatalyst's analysis.

45. With respect to Qatalyst's Selected Companies Analysis, the Proxy Statement fails to disclose the Company's Street Case projections of Non-GAAP Earnings per Share for each of CY2018 and CY2019.

46. With respect to Qatalyst's Selected Transactions Analysis, the Proxy Statement fails to disclose the Company's Street Case projections of next-twelve-months EBITDA.

47. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Certain Unaudited Company Forecasts; and (ii) Opinion of Qatalyst Partners LP.

48. The Proxy Statement omits material information relating to the background leading to the Proposed Transaction and potential conflicts of interest of the Company's named executive officers. The Company's stockholders are entitled to an accurate description of the process the directors used in coming to their decision to support the Proposed Transaction, and any potential conflicts of interest of Company management or Board members that could have had an impact on their decision to pursue and approve the Proposed Transaction.

49. The Proxy Statement states that "[t]he parties have agreed that the Company may

grant employee retention awards to Company employees, including executive officers." It further states that, "[a]s of the date of this proxy statement, none of the Company's executive officers have entered into any agreement with Francisco Partners or its affiliates regarding employment with, or the provision of services to, Francisco Partners or any of its affiliates."

50.     The Proxy Statement, however, fails to disclose the nature, timing, and substance of any discussions or overtures regarding post-merger employment, directorships, or payments during the negotiations leading to the execution of the Merger Agreement, including who participated in the discussions.  This information is necessary for stockholders to understand potential conflicts of interest of Company management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.  Stockholders are entitled to this information, because promises of future employment or compensation could cause members of management to agree to a lower merger consideration, or steer the Company towards their favored bidder and against other interested parties to the detriment of the Company's stockholders.  Accordingly, without this information, the Proxy Statement is materially misleading as to the potential conflicts of interests faced by the Company's management and Board members.

51.     Further, the Proxy Statement states that, on February 26, 2018, the Company entered into an amended non-disclosure agreement with "Party 1," which expressed an interest in acquiring the Company.  Additionally, on March 1, 2018, the Company entered into a "customary" non-disclosure agreement with "Party 2" in connection with the evaluation of a potential transaction between the parties.

52.     The Proxy Statement, however, fails to disclose the terms of the non-disclosure agreements with Party 1 and Party 2, including whether they contain standstill and/or "don't ask,

don't waive" provisions that prevent those interested parties from submitting a superior offer to acquire the Company or from requesting a waiver of the standstill provisions. Notably, the Board agreed to Section 7.2(g) of the Merger Agreement, which provides that the Company "shall not release any third party from, or waive, amend or modify any provision of, or grant permission under or fail to enforce, any standstill provision in any confidentiality agreement in connection with an Acquisition Proposal to which the Company is a party that remains in effect following the execution of this Agreement." As such, it is likely that the non-disclosure agreements do contain such provisions.

53. Accordingly, the Proxy Statement is misleading because, as currently cast, it misleads stockholders into believing that Party 1 and Party 2, which together previously submitted an all-cash offer to acquire the Company, are still free to submit a superior offer to acquire VeriFone. Stockholders would find this information material in deciding whether the all-cash Proposed Transaction with Vertex is the best transaction that the Board could have obtained.

54. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; and (ii) Interests of Certain Persons in the Merger.

55. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and VeriFone**

56. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

57. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in

11

light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. VeriFone is liable as the issuer of these statements.

58. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

59. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

60. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

61. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

62. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

63. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants**

64. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

65. The Individual Defendants acted as controlling persons of VeriFone within the

meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of VeriFone and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

66. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

67. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

68. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

69. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable

harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.  Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.  In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.  Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.  Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: May 17, 2018

**RIGRODSKY & LONG, P.A.**

By: */s/ Brian D. Long*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com
*Attorneys for Plaintiff*

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com